IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALOYSIUS G. MCFALL, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-3049 |
| C. THEODORE FRITSCH, JR., ET AL., | : | |
| Defendants. | : | |

MEMORANDUM

**J. Tucker**                                                              **April __, 2012**

I.    **INTRODUCTION**

Pro se Plaintiff Aloysius G. McFall filed a Complaint against the following Defendants:

the Honorable C. Theodore Fritsch, Jr., Administrative Judge of the Orphan's Court of Bucks

County; the Honorable Ronald D. Castille, Chief Justice of the Supreme Court of Pennsylvania

(hereinafter "the Judicial Defendants"); Charles O. Marte, Jr., Esquire, individually and as a

member of the law firm of Marte and Toadvine; and Tracy L. Cassel-Brophy, Esquire,

individually and as a member of the law firm of Marte and Toadvine (hereinafter "the Legal

Defendants").  Plaintiff's Complaint, inter ali, alleges that Defendants violated his constitutional

rights as the result of various actions taken by the state court.  Defendants the Honorable C.

Theodore Fritsch, Jr. and the Honorable Ronald D. Castille have moved to dismiss Plaintiff's

claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction

and failure to state a claim. The Legal  Defendants also filed a Motion to Dismiss pursuant to

Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

For the reasons that follow, the Court will grant Defendants' motions.

**II.     FACTUAL BACKGROUND**

This case stems from an action arising out of Pennsylvania State Orphan's Court involving the estate of Plaintiff's mother Margaret K. McFall (hereinafter "the underlying litigation") of which Plaintiff and his brother, John T. McFall, were co-executors. Defendant the Honorable C. Theodore Fritsch, Jr. is an Administrative Judge for the Orphans' Court of Common Pleas of Bucks County, Pennsylvania, the successor to the Honorable Daniel C. Lawler, and the presiding judge over the underlying litigation. Defendant the Honorable Ronald D. Castille is Chief Justice of the Supreme Court of Pennsylvania. Defendants Charles O Marte, Jr. and Tracy L. Cassel-Brophy are both members of the law firm of Marte and Toadvine and counsel for three of the heirs to the McFall Estate.

The litigation history of this case is long and tortured. The crux of Plaintiff's complaint is that Defendants deprived him of his constitutional right to due process and equal protection as the result of various actions and orders performed by the state court. Plaintiff avers that the state court's actions are contrary to governing case law and hinges upon an attempt by the Orphan's Court to retaliate against him because of a previous claim he filed against the Register of Wills/Clerk of Orphan's Court. Plaintiff further avers that the violations occurred because of a systematic bias against pro se litigants in the Pennsylvania court system.

**The Underlying Litigation**

On September 29, 2004, following a dispute over letters testamentary, Plaintiff, his co-executor, and four other heirs entered into a settlement agreement concerning the distribution of the McFall Estate. After a dispute arose about a property appraisal, Defendant Charles O. Marte Jr., Esquire, who represented the other heirs, filed a Petition for Contempt against Plaintiff and

his co-executor on November 23, 2004. On March 2, 2005, the Orphan's Court issued a Decree directing the co-executors to make payments to the heirs, pay attorney fees, and supply releases. Plaintiff and his co-executor made ninety percent of the payments and filed an appeal to the Superior Court of Pennsylvania to dispute the remaining payments. The Superior Court quashed the appeal on December 1, 2005 reasoning that it was an appeal from a non-final order.

On May 10, 2006, Marte filed a Petition for Attachment and Adjudication of Civil Contempt to collect the outstanding payments from the court's March 2, 2005 Decree. A hearing on the Petition was held on September 25, 2006, and on October 19, 2006, the court issued a Decree holding the co-executors in civil contempt for failure to comply with the court's order. On December 3, 2007, Plaintiff and his co-executor appealed the October 19, 2006 Decree to the Superior Court. The Superior Court denied the appeal reasoning that Plaintiff had failed to timely file a concise statement of matters of appeal as required by the Pennsylvania Rules of Civil Procedure. On April 2, 2008, the Pennsylvania Supreme Court declined to review the decision.

In October 2007, Marte asked Judge Lawler to issue a Writ of Attachment against Plaintiff and his co-executor. Judge C. Theodore Fritsch, who replaced Judge Lawler upon his retirement, declined to issue the Writ and instead ordered a hearing for May 27, 2008. At the hearing, the court declined Plaintiff's request to vacate the court's October 19, 2006 Decree. Judge Fritsch also refused to certify the March 2, 2005 Decree for appeal or vacate its award of attorney's fees. On July 9, 2008, Judge Fritsch issued separate Writs of Attachment against Plaintiff and his co-executor. On July 11, 2008 , the same day that Plaintiff filed a Notice of Appeal to the Superior Court, Plaintiff and his co-executor appeared before Judge Fritsch and

was sentenced to ninety days incarceration, unless they paid the balance due under the March 2,

2005 Decree.  Plaintiff paid the remaining monies and later filed an appeal to the Superior Court.

The Superior Court affirmed the court's decision on March 17, 2010.  In January 2011, the

Supreme Court denied Plaintiff's petition for allowance of appeal.

Plaintiff filed suit in this Court on May 9, 2011 under 42 U.S.C. §§ 1983 and 1985.[1]

---

[1] Plaintiff's Complaint contains twenty three counts alleging that certain acts performed by the state court resulted in the denial of his due process and or equal protection rights. Plaintiff avers as follows:

Counts 1-2: That the Orphan's Court (hereinafter "the court") denied Plaintiff of his right to a fair hearing by consolidating the March 2005 hearing to include matters in addition to the motion for contempt.  Plaintiff further avers that the court's March 2005 Decree requiring he and his co-executor to pay attorney's fees violated his equal protection rights because the underlying settlement agreement did not provide for attorney's fees and payment for two attorneys was excessive considering the small size of the estate.  (Compl. at ¶¶ 42-45 and 51-53)

Count 3: That the court's September 25, 2006 hearing on Defendant Marte's Petition for Attachment and Adjudication of Civil Contempt deprived Plaintiff of his right to equal protection because the motion was illegal and should have been "preemptively" dismissed by the court since contempt and attachment are improper means of collecting on a monetary debt arising from a contract. (Compl. at ¶¶ 68-69)

Counts 4-6, 11, 15: That the court's October 2006 and July 2008 Decree holding Plaintiff in contempt for failure to comply with the court's March 2005 Decree and subsequent writ of attachment violated Plaintiff's equal protection rights because there was no finding of wrongful intent to withhold the payments and use of an attachment for payment of monies on a contract violates Pennsylvania Judicial Code.  Plaintiff further contends that the court's refusal to certify the March 2005 Order for appeal was a violation of his due process rights.  (Compl. at ¶¶ 78-79, 83-85, 87-91, 142, 166-167).

Counts 7-9: That the Superior Court violated Plaintiff's right to equal protection by affirming the Orphan's Court October 2006 Decree and later denying Plaintiff's application for reargument. Plaintiff further claims that the Rules of Civil Procedure create an artificial barrier to entry into the courts for pro se litigants and are the result of a systemic bias against non-lawyers. (Compl. at ¶¶ 102-104, 108-118, and 126)

Count 10: That Defendant Marte violated Plaintiff's equal protection rights by requesting an attachment with the knowledge that such request violates Judicial Code. (Compl. at ¶¶ 131-132)

Counts 12 -13: That Judge Fritsch violated Plaintiff's right to equal protection during the May 2008 hearing by refusing to overturn Judge Lawler's March 2005 Decree for attorney's fees and rendering a decision before Plaintiff submitted a legal memorandum in support of his argument. (Compl. at ¶¶ 145 and 152-154)

Count 14: That Defendants Fritsch and Marte conspired to violate Plaintiff's civil rights because during the May 2008 hearing Defendant Marte stated that he was opposed to Plaintiff's

On June 6, 2011, Judicial Defendants filed a Motion to Dismiss Plaintiff's Complaint.[2]   On June

---

request to certify the March 2005 Decree for appeal in response to the court's inquiry and the court later refused to certify the decree.

Counts 16: That the court's July 2008 Order violated Plaintiff's right to equal protection because the decision was negatively influenced by persons from the Register of Wills Office. (Compl. at ¶ 181)

Counts 17-19: That the court's July 2008 Order violated Plaintiff's right to equal protection because the court erred in refusing to grant his request for a full hearing on the meaning and effect of the general release contained in the settlement agreement. He further submits that the court's decision to hold him in contempt was contrary to governing case law.  (Compl. at ¶¶ 187-190, 198 and 208)

Count 20: That Defendant Brophy colluded with the court to deny Plaintiff his due process right to appeal since she failed to inform the court that the court's decision to hold Plaintiff in contempt of court violated Judicial Code. (Compl. at ¶¶ 214-218)

Count 21: That the court violated Plaintiff's due process right because the Clerk of Orphan's Court refused to grant Plaintiff's request to "reduce the court's July 17, 2008 order to writing." (Compl. at ¶¶ 228-229)

Counts 22-23: That the Orphan's Court, Superior Court and Supreme Court all conspired to violate Plaintiffs constitutional rights because of a systemic bias against pro se litigants. (Compl. at ¶¶ 251 and 255-256)

Plaintiff requests the following relief: (1) monetary damages; (2) a decree requiring the Orphan's Court to note on the docket that the Orphan Court's Contempt Order violated Plaintiff's civil rights; (3) a decree directing Judge Fritsch and the Orphan's Court of Bucks County not to engage in any future violations of Plaintiff's civil rights; (4) damages against Defendants Marte and Brophy; (5) an order requiring Chief Justice Castille to –  conduct seminars for judges and clerks regarding pro se litigants, establish a lay person disciplinary board for complaints alleging bias against pro se litigants, information on the court's website explaining court procedures and all of Pennsylvania's statutes, and a "pass" for pro se litigants who fail to comply with procedural rules not listed on the court's website.

[2]  Judicial Defendants move for dismissal based on the following grounds: (1) Plaintiff's claims are barred by the statute of limitations; (2) the claims against Judicial Defendants in their official capacity are precluded by Eleventh Amendment immunity; (3) Judicial Defendants in their official capacity are not "persons" under 42 U.S.C. §§ 1983 and 1985; (4) Plaintiff's claims are barred by the Rooker- Feldman doctrine; (5) claim preclusion bars Plaintiff's claims; (6) Plaintiff's claims against Judicial Defendants in their respective individual capacities are barred by judicial immunity; (7) Plaintiff lacks standing to bring a claim for declaratory relief against Chief Justice Castille; (8) Plaintiff's requested relief to have this Court direct and monitor the operation of the Pennsylvania Unified Judicial System violates principles of federalism and comity; and (9) the Complaint fails to set forth cognizable claims.

14, 2011, Defendants Marte and Cassel-Brophy filed a Motion to Dismiss.[3]   Plaintiff filed a

Response in opposition to Defendant's Motions on June 29, 2011 and July 5, 2011, respectively.

The Court will address the pending motions in turn.

III.    **LEGAL STANDARD**

**12(B)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), dismissal is warranted where

a court lacks subject matter jurisdiction over a case.  Rule 12(b)(1) motions are either facial or

factual challenges. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008).  A facial attack

concerns the sufficiency of the pleadings, whereas a factual attack is a dispute over the existence

of certain jurisdictional facts alleged by the plaintiff. Id. (citing United States ex rel. Atkinson v.

Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).  "In reviewing a facial attack, the court

must only consider the allegations of the complaint and documents referenced therein and

attached thereto, in the light most favorable to the plaintiff." Gould Elecs., Inc. v. United States,

220 F.3d 169, 176 (3d Cir. 2000).

By contrast, when a defendant attacks subject matter jurisdiction "in fact," the court is

"free to weigh the evidence and satisfy itself whether it has power to hear the case." Carpet

Group Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen v.

First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  In reviewing a factual attack,

---

[3] Legal Defendants move for dismissal based on the following grounds: (1) Plaintiff's claims
under §§ 1983 and 1985 are barred by the statute of limitations; (2) Plaintiff failed to establish a
claim under § 1983 since he failed to show that Defendants acted under color of state law or that his
federal rights were violated; (3) Plaintiff failed to establish a claim under § 1985 since he failed to
present any well-pleaded facts to establish the existence of a conspiratorial agreement between
Defendants; and (4) Plaintiff's claims are barred by the Rooker- Feldman doctrine.

the court is not confined to the allegations of the complaint. Cestonaro v. United States, 211 F.3d 749, 754 (3d Cir. 2000).  No presumption of truthfulness attaches to the plaintiff's allegations, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Carpet Group Int'l, 227 F.3d at 69 (citation omitted).  The plaintiff bears the burden of persuasion regardless of whether the challenge is facial or factual. Henderson v. Nationwide Mut. Ins. Co., 169 F. Supp. 2d 365, 367-368 (E.D. Pa. 2001).

### 12(B)(6) Motion to Dismiss for Failure to State a Claim

A 12(b)(6) motion to dismiss tests the legal sufficiency of the allegations in the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993).  In deciding a motion to dismiss the court is to view the facts alleged in the complaint as true and to draw reasonable inferences in favor of the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008).  The court does not base its decision on whether it appears likely that the plaintiff will prevail on the merits. Id.  The factual allegations pleaded by a plaintiff need only be a short and plain statement of the claim showing that the pleader is entitled to relief and giving fair notice to the defendant of what the claim is and the grounds upon which it rests.  Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Though detailed factual allegations are not required, to survive a 12(b)(6) motion to dismiss, the court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007).  In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  In Iqbal the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949.  "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded.  Id.  Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief."  Id. at 211.  Ascertaining whether a plausible claim for relief has been pled is a context-specific task that requires the court to draw on its judicial experience and common sense.  Iqbal, 129 S. Ct. 1937 at 1950.  If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged -- but has failed to show -- that the pleader is entitled to relief.  Id.

### III. DISCUSSION

#### A) Defendants' 12(B)(1) Motion to Dismiss

In support of their 12(B)(1) Motions to Dismiss, Judicial Defendants and Legal Defendants both contend that this Court is barred from exercising subject matter jurisdiction over Plaintiff's claims under the Rooker-Feldman doctrine because Plaintiff's alleged injuries arise from the Orphans' Court orders and his appeals to the state appellate courts. In addressing their argument, the Court agrees that Rooker-Feldman is a partial bar to jurisdiction.[4]

#### The Rooker-Feldman Doctrine

The Rooker-Feldman doctrine is a judicially-made doctrine which precludes lower federal courts from exercising appellate jurisdiction over final state court judgments[5]. Goodson v. Maggi, 797 F.Supp.2d 624, 632, (M.D. Pa, 2011)(citations omitted). The doctrine is based on the well established principle that only the Supreme Court of the United States, not lower federal courts, has jurisdiction to review a state court decision. See 28 U.S.C. §1257; see also Parkview Assocs. Partnership v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000). The name Rooker-Feldman is derived from two United States Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). "The doctrine is implicated when, in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action

---

[4] The Court lacks subject matter jurisdiction over twenty of Plaintiff's twenty-three claims.

[5] "The jurisdiction possessed by District Courts is strictly original." Rooker, 263 U.S. at 416.

that would render that judgment ineffectual." In re Madera, 586 F.3d 228, 232 (3d Cir. 2009)(citing FOCUS v. Allegheny Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996)). The doctrine also applies to claims alleging that the state court's action was unconstitutional, such as a violation of the Equal Protection and Due Process Clauses under the Fourteenth Amendment. Goodson, 797 F.Supp.2d at 632.

To determine whether a claim in federal court is barred by Rooker-Feldman, courts applied a two part test – a federal claim was barred (1) if it was "actually litigated" in state court prior to the filing of the federal action; or (2) if it was "inextricably intertwined" with the state adjudication. See In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005). Reliance on the term "inextricably intertwined" proved difficult, with many courts applying the doctrine too broadly. Therefore, in 2005, the Supreme Court limited the application of Rooker-Feldman and rejected the court's use of the phrase "inextricably intertwined" to extend the doctrine to situations where plaintiff's injuries were not the result of a state court judgment. See Exxon Mobil Corporation v. Saudi Basic Industries Corporation, 544 U.S. 280, 282, 125 S.Ct. 1517, 161 L.Ed2d 454 (2005). The Supreme Court held that the doctrine must be "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id.

In 2010, applying the guidance provided by Exxon Mobil, the Third Circuit in Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010), cautioned district courts about relying on the pre-Exxon formulation. The court instead implemented a new four part test, each part of which must be satisfied, : (1) the federal plaintiff lost in state-court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3)

the state judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the federal court to review and reject the state judgments. Id. (quotation marks and citations omitted). It also opined that the phrase "inextricably intertwined" does not create an additional legal test. Id. at 170. The court explained that the term's purpose is simply to highlight that a challenge to a judgment will be barred under the doctrine, even if the claim forming the basis of the challenge was not raised in the state court proceeding, so long as the resulting injury was caused by a state court judgment and seeks review and reversal of that judgment. Id. at 170.

Of the four factors, the second and fourth factor are most important because they determine "whether a federal suit presents an independent non-barred claim." Id. at 166. The second factor looks at the source of the plaintiff's injury and requires that the injury be caused by the state judgment itself and not the defendants' actions. Id. The court of appeals provided the following illustrations to demonstrate the difference between when a judgment is the source of injury and when the injury is caused by the defendant's actions:

> Suppose a state court, based purely on state law terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

Id. at 166-67 (citing Hoblock v. Albany County Brd of Elections, 422 F.3d 77, 87 (2d Cir. 2005).

> By contrast, suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination.

Id. at 167.

A federal suit will not be barred by Rooker-Feldman if the plaintiff's injury is caused by the defendant's actions and not by the state court judgment, "even if it the federal court is asked to deny a legal conclusion reached by the state court" or if the injury contributed to the court's judgment. See id. at 167-68 (finding that claims that a state court judgment was procured by certain defendants through fraud, misrepresentation, or other improper means are independent and thus not barred by Rooker-Feldman). The timing of the injury is helpful in determining when a federal suit is independent. Id. Injuries occurring before a judgment is rendered are generally not barred because they stem from a source other than the state-court proceeding. Id. (citations omitted). Also of importance is whether the defendant's action is a product of the state court judgment. Id. In such cases, the action is not independent and will be barred under Rooker-Feldman.[6] Id.

The fourth factor asks whether the federal plaintiff's claims will require appellate review of state-court decisions and looks at the relief requested by the plaintiff. Id. Claims asserting injuries caused by the state-court judgment do not automatically require the district court to review and reject the judgment. In Ness v Shepard, 68 F.3d 1003, 1004 (7th Cir. 1995), the Great Western court observed that the federal plaintiff alleged that his losses in state court were the product of a conspiracy among the judges and lawyers. Id. Although the Great Western court acknowledged that Plaintiff was in a sense attacking the state court's decision, the court

---

[6] In Hoblock, voters filed suit against the County Board of Elections after the board refused to count absentee ballots based on orders from the state court. 422 F.3d at 89. The court held that the suit was barred by Rooker-Feldman since the state court judgment itself produced the injury and the board acted under compulsion of the state order. Id.

explained that if a federal plaintiff can prove that the defendants conspired to reach a predetermined outcome in state court, Rooker-Feldman will not block the claim. Id. at 172.

In the instant case, the Court can quickly dismiss Counts 1-13, 15, 17-19 and 21 of the Complaint as they satisfy all four factors set out in Great Western. Clearly, Plaintiff is a state-court loser and the judgments were rendered before Plaintiff filed suit in this Court. Also, in all of the above counts Plaintiff contends that the state court decisions were incorrect or that the decisions themselves violated his constitutional rights and requests that this Court review and reject those judgments. As discussed above, this Court is precluded from exercising appellate jurisdiction over a state court decision. If this Court was to grant the relief sought by Plaintiff, the Court would have to directly review the validity of the state court judgments which is barred under Rooker-Feldman. Therefore, the Court lacks jurisdiction over these claims.

Plaintiffs remaining claims – Counts 14, 16, 20, 22 and 23 – require a more in depth analysis because Plaintiff is alleging that defendants' action, not the state-court judgment caused his injury. In Counts 14 and 20 Plaintiff alleges that the Legal Defendants conspired with Judge Fritsch to deprive him of his civil rights as a result of actions and statements made by the Defendants while litigating the state case. Specifically, in Count 14 Plaintiff contends that Judge Fritsch and Marte conspired to deny his right to an appeal because during the May 2008 hearing Marte stated that he was opposed to Plaintiff's request to certify the March 2005 Decree and Judge Fritsch later refused to certify the Decree. Similarly, in Count 20 Plaintiff contends that Defendant Brophy violated his right to due process by failing to inform the court that its decision was erroneous. The Court finds that neither claim is the type of independent injury that Great Western found was not barred by Rooker-Feldman. The source of Plaintiff's injury in both

counts is not the Defendants as Plaintiff contends, but is the result of the state-court judgment itself.  As such, both claims are barred under Rooker-Feldman.

In Count 16, Plaintiff appears to allege that certain employees from the Register of Wills Office, who were in attendance at the July 2008 hearing, influenced the court's decision. Plaintiff previously filed a claim against the Register of Wills Office and suggests that one of the employees may have pressured the judge to rule against him.  In Counts 22 and 23 Plaintiff contends that the Orphan's Court, Superior Court and Supreme Court all conspired to violate Plaintiff's constitutional rights because of a "systemic bias against pro se litigants."  While the question is close,  the Court can not conclude that the claims would require a direct review of the state court's decision since the alleged injuries occurred before the judgments.  As such, Rooker-Feldman does not present a bar to Plaintiff's claims.

### B)      Defendants' 12(B)(6) Motion to Dismiss

To the extent that the Court is not barred from hearing Plaintiff's claims under the Rooker-Feldman doctrine, Plaintiff's remaining claims are dismissed for failure to state a claim for relief.

The Court agrees with Judicial Defendants that Plaintiff's claims against the Judicial Defendants are barred by Eleventh Amendment immunity.   The Eleventh Amendment provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.  U.S. CONST. amend. XI.  The amendment acts as a jurisdictional bar which deprives federal courts of subject matter jurisdiction over claims asserted against states.  Similarly, federal courts lack jurisdiction to hear

claims asserted against state officials in their official capacities since such suits are treated as suits against the state. Eleventh Amendment immunity is not absolute, however. States can voluntarily waive immunity. Alternatively, Congress may require a waiver of immunity as a condition to receive federal funding, although Congress can not order the waiver directly. Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 198 (3d Cir. 2008). In the instant case, Plaintiff filed suit against the Judicial Defendants in their official capacities which is essentially a suit against the Supreme Court of Pennsylvania and the Orphan's Court of the Court of Common Pleas of Bucks County. Pennsylvania has not waived its Eleventh Amendment immunity, therefore Plaintiff's claims against the Judicial Defendants are barred.

To the extent that Plaintiff attempts to proceed via 42 U.S.C. §§ 1983 and 1985, his claims also fail. To prevail in a Section 1983 action, a plaintiff must prove: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 687, 749 n.9 (1999). To prevail in a Section 1985 action, a plaintiff must prove that (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to deprive a person or class of persons of equal protection of the laws or equal privileges and immunities under the laws; (3) defendants committed an act in furtherance of the conspiracy; and (4) defendants' actions resulted in injury to the plaintiff. See Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006). Plaintiff's § 1983 claim fails because he has not shown that the legal Defendants "acted under color of state law." Defendants Brophy and Marte are private actors that do not perform any of their duties as attorneys under the color of state law. Therefore, they are not subject to a §

1983 suit.  Similarly, the Judicial Defendants in their official capacities are not "persons" and therefore are not subject to suit as well.

Plaintiff's § 1985 claims also fail because his conspiracy allegations are merely conclusory.  Cf.  Ashcroft v. Iqbal, 556 U.S. 662 (2009).  To succeed on his claim, Plaintiff must show that the Legal Defendants conspired with the courts to ensure the outcome of the case.  However, Plaintiff has failed to plead facts plausibly suggesting a conspiratorial agreement between any of the Defendants.   Additionally, Plaintiff has failed to show that pro se litigants are considered a class for purposes of § 1985.  Even if pro se litigants are a class for purposes of the statute, Plaintiff has not presented any well-pleaded facts to show that any of the Defendants' actions were the result of a systematic bias against pro se litigants.

For the foregoing reasons, the Court finds that the complaint is partially barred by Rooker-Feldman, and partially defective for failure to state a claim on which relief could be granted.